M. Joanne TURNER, Appellant–Defendant,

v.

R. Ross DAVIS, Appellee–Plaintiff.

No. 49A02–9707–CV–483.

Court of Appeals of Indiana.

Oct. 6, 1998.

Charles F. Robinson, Jr., Yarling, Robinson, Hammel & Lamb, Indianapolis, for Appellant–Defendant.

Andrew C. Maternowski, Indianapolis, for Appellee–Plaintiff.

## OPINION

STATON, Judge.

M. Joanne Turner appeals a $214,000 jury verdict in favor of R. Ross Davis for injuries Davis sustained in an automobile collision. Turner raises four issues on appeal which we restate as:

I. Whether Davis presented sufficient evidence regarding the cause of her sleeping ailment.

II. Whether the trial court erred by refusing Turner's tendered jury instruction regarding the standard for evaluating medical evidence.

III. Whether the trial court erred by instructing the jury that it could consider in its determination of damages the value of Davis's lost wages.

IV. Whether an instruction regarding right-of-ways at intersections with traffic lights was erroneous.

We reverse and remand.

On February 11, 1993, Davis and Turner were involved in an automobile collision. The collision occurred in an intersection with a traffic light which had left turn arrows on both the north and south sides of the intersection.

As Davis traveled north, approaching the intersection, the light was green. When she entered the intersection, however, she noticed a car coming toward her and attempted to put on the brakes. Davis's car collided with the oncoming car which was driven by Turner. Turner had been driving south and was attempting to make a left turn onto the intersecting road. Turner testified that she saw a yellow turn arrow as she approached the intersection.

Davis was injured in the collision. Following the collision, Davis also developed a condition which made it difficult for her to stay awake. She began falling asleep at work, and the condition affected her concentration and memory. Her work performance suffered, and she was eventually terminated from her job due, in part, to her sleeping ailment.

Davis sued Turner for negligence, seeking damages incurred as a result of her injuries, including the loss of wages resulting from her termination, and reimbursement for the damage to her vehicle. A jury found Turner liable and awarded Davis $214,000. Turner appeals.

### I.

#### *Sufficiency of the Evidence*

Turner argues that Davis presented insufficient evidence regarding whether the collision proximately caused her sleeping ailment. Our test for sufficiency of the evidence requires that we neither weigh the evidence nor resolve questions of credibility. We look only to the evidence of probative value and the reasonable inferences to be drawn therefrom which support the verdict. *Bright v. Kuehl,* 650 N.E.2d 311, 315 (Ind.Ct. App.1995), *reh. denied, trans. denied* (citing *Martin v. Roberts,* 464 N.E.2d 896 (Ind. 1984)).

The evidence most favorable to the verdict reveals that Davis began having difficulty staying awake following the February 11, 1993 collision. She would frequently fall asleep while at work. Her condition caused problems with her concentration and memory, which in turn, negatively affected her job performance. A doctor specializing in sleeping ailments treated her, and a possible diagnosis was narcolepsy. Davis was eventually fired from her job due, in part, to her sleeping ailment.

Turner argues that this evidence is insufficient to prove that Davis's sleeping ailment was caused by the February 11, 1993 accident. We agree. In *Daub v. Daub,* 629 N.E.2d 873 (Ind.Ct.App.1994), *trans. denied,* this court held:

An essential element in a cause of action for negligence is the requirement of a reasonable connection between a defendant's conduct and the damages which a plaintiff has suffered. This element requires, at a minimum, causation in fact—that is, that the harm would not have occurred 'but for' the defendants' conduct. The 'but for'·

analysis presupposes that, absent the tortious conduct, a plaintiff would have been spared suffering the claimed harm.

Hence, in order for the plaintiff to carry her burden of proof, she must present evidence of probative value based on facts, or inferences to be drawn from the facts, establishing both that the wrongful act was the cause in fact of the occurrence and that the occurrence was the cause in fact of her injury. The plaintiff's burden may not be carried with evidence based merely upon supposition or speculation. Standing alone, evidence establishing a mere possibility of cause or which lacks reasonable certainty or probability is not sufficient evidence by itself to support a verdict. Civil liability may not be predicated purely upon speculation.

When an injury is objective in nature, the plaintiff is competent to testify as to the injury and such testimony may be sufficient for the jury to render a verdict without expert medical testimony. Ordinarily, however, the question of the causal connection between a permanent condition, an injury and a pre-existing affliction or condition is a complicated medical question. When the issue of cause is not within the understanding of a lay person, testimony of an expert witness on the issue is necessary. . . .

*Id.* at 877–78 (citations omitted).

■ Davis testified that her sleep problems began shortly after the accident. Other than this temporal relationship, she presented no evidence establishing that her condition was caused by the collision. Although Davis introduced medical records establishing that she indeed suffered from a sleeping ailment, those documents contain no doctor's opinion linking the ailment with the automobile collision.[1] The development and cause of an ailment such as this is a complicated medical question requiring expert testimony.

*See Morphew v. Morphew,* 419 N.E.2d 770, 777 (Ind.Ct.App.1981) (expert testimony required to establish the diagnosis of muscle disease); *Daub,* 629 N.E.2d at 878 (expert testimony required to establish the specific cause of a back injury where plaintiff has history of back problems). Therefore, we hold that Davis presented insufficient evidence to establish that her sleeping ailment was caused by the collision.[2]

## II.

### Medical Causation Evidence Instruction

■ Turner argues that the trial court erred by refusing to give the jury an instruction she tendered regarding the standard for evaluating medical causation evidence. We review the trial court's refusal to give a tendered instruction for an abuse of discretion. *CSX Transp., Inc. v. Kirby,* 687 N.E.2d 611, 616 (Ind.Ct.App.1997), *trans. denied.* We will reverse a trial court for failure to give a tendered instruction if: (1) the instruction is a correct statement of the law; (2) it is supported by the evidence; (3) it does not repeat material adequately covered by other instructions; and (4) the substantial rights of the tendering party would be prejudiced by the failure to give it. *Id.* at 616–17.

Turner tendered the following instruction:

On the question of whether or not [Davis's] injuries were a result of the automobile accident in question and whether or not [Davis] will suffer any permanent injuries or damages in the future as a result of the accident; I instruct you that [Davis] has the burden of proving to a reasonable degree of medical probability that any injuries are related to the accident in question and that any future medical problems will arise as a result of those injuries.

Testimony that is a mere possibility that something has happened or will happen in

---

1. Davis contends that her doctor did give an opinion regarding the cause of her sleep ailment when, following the automobile collision, he assessed Davis's medical condition as follows: "Cephalgia with somatic dysfunction, secondary to automobile accident." Record at 233 (exhibit 2, p. 14). "Cephalgia" is defined as a headache. Mosby's Medical Dictionary 291 (4th ed.1994). "Soma" or "somatic" is defined as "the body." *Id.* at 1455. Thus, the doctor's assessment did

not specifically address Davis's sleeping ailment; rather, it addressed her headaches and bodily dysfunction.

2. Turner also contends that Davis presented insufficient evidence regarding whether her collisionrelated ailments caused her to lose wages. Because we remand for a new trial regarding damages, we need not address this contention.

the future should not be considered by you in arriving at a verdict.

Supp. Record at 12. Turner first argues that this instruction correctly states the law.

 Davis's claim against Turner was based upon a theory of negligence. To recover under a negligence theory, Davis was required to show: (1) Turner owed Davis a duty of care at the time Davis was injured; (2) Turner failed to conform her conduct to that standard of care; and (3) damages were proximately caused to Davis by the breach. *Blake v. Calumet Constr. Corp.,* 674 N.E.2d 167, 169–70 (Ind.1996). Generally, a plaintiff must prove these elements by a preponderance of the evidence, and the trial court so instructed the jury in the present case. *See Widmeyer v. Faulk,* 612 N.E.2d 1119, 1121 (Ind.Ct.App.1993). Turner's instruction would have created a higher standard of proof with respect to the element of causation, requiring the jury to conclude to a "reasonable degree of medical probability" that Davis's injuries were proximately caused by the automobile collision. Turner argues that this higher standard is required by Indiana case law, including *Noblesville Casting Div. of TRW v. Prince,* 438 N.E.2d 722 (Ind.1982) and *Daub v. Daub,* 629 N.E.2d 873 (Ind.Ct.App.1994).

In *Noblesville Casting,* our supreme court held that the admissibility of expert testimony regarding the cause of medical injuries does not hinge upon the expert testifying to a threshold level of certainty. 438 N.E.2d at 731. Thus, the court held that an expert no longer had to testify to a "reasonable scientific or medical certainty" that an injury was caused by a particular occurrence in order for the testimony to be admissible. *Id.* Notwithstanding its holding, our supreme court still observed that "an opinion [regarding the cause of medical injuries] which lacks reasonable certainty or probability is not sufficient evidence by itself to support a verdict." *Id.* Following *Noblesville Casting,* this court has held that *any* evidence which establishes a mere possibility of cause or lacks reasonable certainty or probability is not sufficient evidence by itself to support a verdict. *Daub,* 629 N.E.2d at 877.

 Contrary to Turner's argument, *Noblesville Casting* and its progeny do not address a plaintiff's standard of proof. Rather, they address only the quantum and quality of evidence necessary for the plaintiff to meet the established standard of proof. Thus, a plaintiff must prove causation by a preponderance of the evidence, but this burden will not be met where the plaintiff's evidence as a whole lacks reasonable certainty or probability. Because Turner's instruction sought to impose a higher standard of proof than is required, the trial court correctly rejected it. We note, however, that our holding does not preclude the court from giving a correctly-worded instruction regarding the type of evidence necessary to support a damage award in a case such as this.

## III.

### *Lost Wage Instruction*

 Turner contends that the trial court erred by instructing the jury that it could consider as damages the value of Davis's lost wages because, she argues, there was insufficient evidence linking Davis's lost earnings to her injuries. In reviewing a claim that evidence was insufficient to support the giving of an instruction, we may look only to the evidence most favorable to the appellee and any reasonable inferences to be drawn therefrom. *Antcliff v. Datzman,* 436 N.E.2d 114, 122 (Ind.Ct.App.1982), *reh. denied, trans. denied.* If there is any evidence which supports the instruction, it was properly given. *Id.*

Davis testified that one of the reasons given by her employer for her termination was her inability to perform her duties due to excessive sleepiness. Too, Davis testified regarding the significant amount of time she spent receiving medical treatment, and the jury could have inferred the loss of work time and wages as a result of her collision-related injuries. Considering only the evidence most favorable to the appellee, Davis's testimony supports the trial court's decision to instruct the jury that it could award her damages for lost wages.

Turner also contends that Davis presented insufficient evidence to establish that her sleeping ailment prevented her from obtaining other employment and to allow the jury

to calculate the amount of her damages. This argument does not address whether there is any evidence supporting the giving of a lost wage instruction; rather, it essentially goes to the weight of Davis's evidence. Because there was some evidence supporting the instruction, the trial court did not err by giving it. *Id.*

## IV.

### *Right–of–Way Instruction*

 Finally, Turner argues that the trial court erred by giving Instruction 13. This instruction read, in part:

## INSTRUCTION NO. 13

At the time of the occurrence being considered, there were statutes in effect in the State of Indiana that provided as follows:

1. A person who drives a vehicle within an intersection intending to turn to the left shall yield the right-of-way to a vehicle approaching from the opposite direction that is within the intersection or so close to the intersection as to constitute an immediate hazard.

After yielding and giving a signal, the person who drives the vehicle may make the left turn, and the persons who drive other vehicles approaching the intersection from the opposite direction shall yield the right-of-way to the vehicle making the turn. I.C. 9–21–8–30

. . .

If you find from a preponderance of the evidence that a party violated any of these statutes on the occasion in question, such conduct would constitute negligence on the part of that party.

Supp. Record at 57. Turner objected to this instruction because, standing alone, it would allow the jury to find her negligent for making a left hand turn while Davis was within or approaching the intersection, even if the jury also determined that Turner was presented with a left turn arrow at the time. Turner testified that she saw a yellow turn arrow as she approached the intersection.

 "The manner of instructing the jury lies within the sound discretion of the trial court, whose ruling will not be reversed unless an instruction error is such that, taken as a whole, the charge to the jury misstates

the law or otherwise misleads the jury." *Koziol v. Vojvoda,* 662 N.E.2d 985, 991 (Ind.Ct. App.1996). Because we conclude that the jury would not be misled by Instruction 13 when read in conjunction with the remaining instructions, we hold that the trial court did not abuse its discretion by giving Instruction 13.

The court instructed the jury regarding the meaning of yellow and green turn arrows in Instruction 14. Reading this instruction in conjunction with Instruction 13, we believe the jury was correctly informed regarding which driver has the right-of-way when turn arrows are involved. Although Instruction 13 is poorly worded, we do not believe that, when the instructions are read as a whole, it would have the effect of misleading the jury. Accordingly, we hold that the trial court did not abuse its discretion by so instructing the jury.

### *Conclusion*

 We hold that Davis presented insufficient evidence to prove that her sleeping ailment was caused by the collision. The jury returned a general verdict in Davis's favor, awarding her $214,000 in damages. We are unable to determine what portion of these damages, if any, is attributable to the sleeping ailment and what portion is attributable to the other damages suffered by Davis, including damage to her vehicle and damages she incurred as a result of her non-sleep related injuries. Because Davis did present sufficient evidence to prove that Turner breached a duty of care, we remand to the trial court for a new trial only on the issue of the damages proximately caused to Davis by Turner's breach.

Reversed and remanded.

GARRARD, J., concurs.

DARDEN, J., dissents with separate opinion.

DARDEN, Judge, dissenting.

I concur with the majority on all issues except issue one where the majority holds that Davis presented insufficient evidence that her sleeping ailment was caused by the collision.

Our standard of review for sufficiency of the evidence is well-settled. We neither reweigh the evidence nor judge the credibility of witnesses. *Wallace v. Estate of Davies by Davies*, 676 N.E.2d 422, 426 (Ind.Ct.App. 1997), *trans. denied.* Rather, we consider only the evidence most favorable to the verdict. *Id.* If substantial evidence of probative value supports the verdict, it will not be set aside. *Id.*

My review of the record reveals unrefuted evidence that Davis did not suffer from any major physical ailments or disabilities prior to the collision. After the collision, Davis, who was knocked unconscious, suffered from headaches, panic attacks, dental damage, pain and suffering, and a sleep ailment. She also underwent two surgeries for a torn rotator cuff. Davis testified that the resulting injuries and sleeping ailment were caused by the collision. Her testimony was supported by her medical records which the jury had the benefit of receiving.

Based upon this evidence, I cannot agree that Davis presented insufficient evidence that the sleeping ailment was caused by the collision. Rather, I believe that the majority has reweighed the evidence on causation—an issue that is most appropriately left for a determination by the trier of fact. *See Estate of Pflanz v. Hunter*, 678 N.E.2d 1148 (Ind.Ct.App.1997). I therefore respectfully dissent from the majority with regard to issue one and I would affirm the trial court in all other respects.