**Christine S. LeBRUN and Jesse LeBrun, Donna Bennett, as Commissioner of Indiana Department of Insurance and William Tabor, as Panel Chairman, Appellants–Respondents,**

v.

**D.W. CONNER, Jr. Appellee–Petitioner.**

No. 84A05–9708–CV–359.

Court of Appeals of Indiana.

Dec. 8, 1998.

Eric A. Frey, Terre Haute, for Appellants–Respondents.

Stephen J. Peters, Richard Winegardner, Indianapolis, for Appellee–Petitioner.

**OPINION**

RATLIFF, Senior Judge.

### STATEMENT OF THE CASE

Plaintiffs/Respondents–Appellants Christine S. LeBrun; Jesse LeBrun; Donna Bennett, as Commissioner of Indiana Department of Insurance and William Tabor, as Panel Chairman appeal the trial court's grant of summary judgment in favor of Defendant/Petitioner–Appellee D.W. Conner, Jr.

We affirm.

### ISSUE

Christine and Jesse raise three issues for our review, which we consolidate and restate as: whether the trial court erred in concluding, as a matter of law, that Christine and Jesse's claim was barred by the applicable statute of limitations.

## FACTS AND PROCEDURAL HISTORY

The facts most favorable to Christine and Jesse indicate that Christine consulted Conner, an optometrist, on March 1, 1991. Conner took a history, conducted an examination, and prescribed glasses for Christine. Conner advised Christine to eliminate caffeine from her diet in an attempt to relieve intraocular pressure. Conner neither referred to the possibility that Christine had glaucoma, nor advised her to seek treatment. He advised her to return in a year for a standard eye examination.

Christine consulted Conner for treatment of an eye infection on December 6, 1991. Again, there was no reference to the possibility that Christine had glaucoma. This was the last time that Christine consulted with Conner.

On February 18, 1993, Christine consulted Dr. James Pickrell, an ophthalmologist. Pickrell informed her that she had glaucoma, as evidenced by extremely elevated pressures in her eyes. Pickrell gave Christine eye drops and required her to come back every day for monitoring.

On October 27, 1993, Christine picked up her records from Conner's office. She then gave the records to Pickrell so that he would have her complete medical record.

In 1995, Christine consulted with an attorney for assistance in obtaining social security disability benefits due to her glaucoma. By this time, Pickrell had informed Christine that had her interocular pressure been monitored previously and treated with drops, it could have been controlled.

On February 22, 1995, Christine and Jesse (hereinafter referred to collectively as, the "LeBruns") filed a proposed complaint with the Indiana Department of Insurance pursuant to the Indiana Medical Malpractice Act (Ind.Code § 27–12–1 et seq.) alleging that Conner negligently monitored Christine for elevated intraocular pressure. In response to the proposed complaint, Conner raised a statute of limitations defense. He also informed the LeBruns that he had instructed Christine to return for a follow up examination one month after the initial examination and that her failure to do so absolved him of any negligence. He gave the LeBruns a copy of Christine's medical record which indicated that he had directed her to return and that he had diagnosed her as having glaucoma.

The LeBruns compared the medical records sent by Conner with the medical records they had previously picked up from his office. They discovered that the references to the follow up examination and the diagnosis of glaucoma were not in the records they had picked up. In a discovery deposition, Conner admitted adding these references at some time up to three years after the entry made on the day of the initial examination. The LeBruns amended their complaint to allege active fraud by Conner for the purposes of defeating Conner's statute of limitations defense.

Conner filed a motion for summary judgment in the trial court. In granting the motion, the trial court issued specific findings of fact and conclusions of law. The LeBruns now appeal.

## STANDARD OF REVIEW

The purpose of summary judgment is to end litigation about which there can be no factual dispute and which may be determined as a matter of law. *Red Roof Inns, Inc. v. Purvis,* 691 N.E.2d 1341, 1343 (Ind.Ct. App.1998), *trans. denied.* Findings of fact and conclusions of law are neither required nor prohibited in the summary judgment context. *Althaus v. Evansville Courier Co.,* 615 N.E.2d 441, 444 (Ind.Ct.App.1993), *reh'g denied.* Although specific findings and conclusions aid appellate review, they are not binding on this court. *Id.* Instead, when reviewing an entry of summary judgment, we stand in the shoes of the trial court. We do not weigh evidence, but will consider the facts in the light most favorable to the nonmoving party. *Reed v. Luzny,* 627 N.E.2d 1362, 1363 (Ind.Ct.App.1994), *reh'g denied, trans. denied.* Summary judgment is appropriate only when the evidentiary matter designated by the parties shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Ramon v. Glenroy Construction Co., Inc.,* 609 N.E.2d 1123, 1127 (Ind.Ct.

App.1993), *trans. denied.* We may sustain a summary judgment on any theory supported by the designated evidence. Ind.Trial Rule 56(C).

### DISCUSSION AND DECISION

Ind.Code § 27–12–7–1 provides that a medical malpractice claim must be filed within two years after the date of the alleged act, omission, or neglect. Indiana courts have repeatedly held that this two year period begins to run at the occurrence of the negligence rather than at the time the negligence is discovered. *See e.g., Weinberg v. Bess,* 638 N.E.2d 841, 843 (Ind.Ct.App.1994), *reh'g denied.* Here, the LeBruns' claim was filed more than two years after Christine consulted with Conner. The LeBruns contend, however, that the statute of limitations was tolled under the fraudulent concealment and/or continuing wrong doctrines.

#### a. Fraudulent Concealment

■ Our supreme court has held that the doctrine of fraudulent concealment "operates to estop a defendant from asserting a statute of limitations defense when that person, by deception or violation of a duty, has concealed material from the plaintiff *thereby preventing discovery of a wrong.*" *Hughes v. Glaese,* 659 N.E.2d 516, 519 (Ind.1995) (emphasis supplied). Equitable estoppel may arise from active efforts to conceal the malpractice or from a more passive failure to disclose material information when a fiduciary or confidential relationship exists between the health care provider and the patient. *Id.* The principal difference between active and constructive (passive) fraudulent concealment "lies in the different points in time at which plaintiffs may commence their malpractice actions." *Id.* When the concealment is constructive, the duty to disclose ceases at the termination of the health care provider/patient relationship or at the time that the plaintiff actually discovers or has a reasonable opportunity to discover the malpractice, whichever comes first. *Umolu v. Rosolik,* 666 N.E.2d 450, 453 (Ind.Ct.App.1996), *reh'g denied.* When the concealment is active, however, the period of estoppel "is not affected by the date of termination of the relationship but continues for a reasonable time after

'the plaintiff discovers the alleged malpractice or discovers information which in the exercise of reasonable diligence would lead to discovery of the malpractice.' " *Hughes,* 659 N.E.2d at 519. Thus, whether the fraudulent concealment is active or constructive, a plaintiff must institute an action within a reasonable time after the patient learns of the malpractice, "or discovers information which would lead to the discovery of malpractice if the patient exercises reasonable diligence." *Id.*

In the present case, the LeBruns contend that the designated evidence establishes a genuine issue of material fact as to whether Conner engaged in active fraudulent concealment. A review of the record indicates that Conner did attempt to make a change to the medical records. However, this fact does not automatically estop Conner from asserting a statute of limitations defense.

■ The burden is on the plaintiff to establish that she has exercised reasonable diligence to discover the alleged malpractice. *Hospital Corp. of America v. Hiland,* 547 N.E.2d 869, 875 (Ind.Ct.App.1989), *opinion adopted by Cacdac v. Hiland,* 561 N.E.2d 758, 759 (Ind.1990). A plaintiff learns, or should have learned, of information which would lead to discovery of malpractice when she is informed that she has the condition which she claims was brought on by the malpractice. *Colbert v. Waitt,* 445 N.E.2d 1000, 1003 n. 5 (Ind.Ct.App.1982) (holding that the knowledge of the condition rather than its reason destroys the estoppel). A reasonably diligent patient would conclude that malpractice occurred in the previous health care provider/patient relationship when she learns that she has the condition for which she claims the previous health care provider is responsible. *Id.*

After the plaintiff is deemed to have learned of the malpractice, she does not have two full years in which to file a claim. *Umolu,* 666 N.E.2d at 453. Instead, the law requires the plaintiff to institute an action within a reasonable time after the alleged malpractice is deemed to have been discovered. *Id.*

■ On February 18, 1993, the LeBruns were informed by Pickrell that Christine had glaucoma. Under our case law, this is information which in the exercise of reasonable diligence should have lead to the discovery of the malpractice. The LeBruns waited over two years after this information was relayed to them to file their claim, a period which exceeds the delay which our courts have deemed reasonable. *See Yarnell v. Hurley,* 572 N.E.2d 1312, 1315 (Ind.Ct.App.1991), *trans. denied* (a period of two years and eight days deemed unreasonable); *Cyrus v. Nero,* 546 N.E.2d 328, 331 (Ind.Ct.App.1989) (twenty-two months); *Spoljaric v. Pangan,* 466 N.E.2d 37, 45 (Ind.Ct.App.1984), ·eh'g *denied, trans. denied* ("well over a year"). In waiting so long, the LeBruns divested themselves of the opportunity to estop Conner from raising his statute of limitations defense.

Furthermore, we note that active fraudulent concealment operates to estop a health care provider from raising a statute of limitations defense only when the fraud operates to prevent the plaintiff from discovering the wrong. Here, the LeBruns discovered the alleged malpractice and filed suit. There is no designated evidence to indicate that Conner's fraud operated to prevent the LeBruns from discovering the alleged malpractice.

#### b. Continuing Wrong

■ The continuing wrong doctrine is applicable "where an entire course of conduct combines to produce an injury." *Hiland,* 547 N.E.2d at 876. When conduct is determined to constitute a continuing wrong, the statute of limitations is tolled "so that it does not commence running until the wrongful act ceases." *Id.* When a patient's sole claim is a failure to diagnose and treat a disease, the omission cannot as a matter of law extend beyond the time the health care provider last

rendered a diagnosis. *Havens v. Ritchey,* 582 N.E.2d 792, 795 (Ind.1991).

■ In the present case, the only negligent acts alleged are Conner's failure to diagnose and to monitor (treat) Christine's glaucoma. The last opportunity for Conner to diagnose and treat Christine arose on December 6, 1991. As a matter of law, the continuing wrong ceased and the statute began to run on that date.

Furthermore, Christine's glaucoma was discovered on February 18, 1993, and she immediately began treatment with Pickrell. While the health care provider/patient relationship between Christine and Conner arguably may have continued beyond that date, there was no "continuing wrong" after that point. Even if the statute was tolled until February 18, 1993, the LeBruns' action was barred at the time of filing on February 22, 1995. *See Yarnell,* 572 N.E.2d at 1315.

### CONCLUSION

The trial court did not err in granting summary judgment on the basis that the LeBruns failed to timely file their claim.

■ Affirmed.[1]

SHARPNACK, C.J., and GARRARD, J., concur.

---

1. The LeBruns contend in their reply brief that the applicable occurrence-based statute of limitations is unconstitutional. However, they failed to raise the issue in their original brief. An issue raised in a reply brief that was not advanced in the appellant's original brief is waived and will not be considered on appeal. *See Willig v. Dowell,* 625 N.E.2d 476, 481 (Ind.Ct.App.1993), *trans. denied.*

We note that the issue of the constitutionality of the occurrence-based statute of limitations is currently before our supreme court. We further note that the LeBruns would not prevail under a discovery-based statute of limitations, as they knew, or should have known, of the alleged malpractice more than two years before they filed their proposed complaint.